DAVIS v. DAVIS

[229 N.C. App. 494 (2013)]

ROBIN E. DAVIS, Plaintiff
v.
CHARLES D. DAVIS, III, Defendant

No. COA13-113

Filed 17 September 2013

**1. Child Custody and Support—modification of order—no findings of changed circumstances**

   Portions of a child custody order modifying visitation and ordering defendant to attend anger management classes were vacated where none of the trial court's modifications of the prior order were supported by a finding of a substantial change in circumstances that affected the welfare of the children.

**2. Contempt—civil—withholding child visitation**

   The trial court correctly denied defendant's motion for contempt in a dispute over withheld child visitation. Even if the evidence could have supported a contrary finding, there was at least some evidence to support the trial court's finding that plaintiff's actions were justified under the circumstances.

Appeal by defendant from Order entered 13 May 2012 by Judge Stephen V. Higdon in District Court, Union County. Heard in the Court of Appeals 15 August 2013.

*Stepp Lehnhardt Law Group, P.C. by Donna B. Stepp and Mallory A. Willink, for plaintiff-appellee.*

*Krusch & Sellers, P.A. by Rebecca K. Watts, for defendant-appellant.*

STROUD, Judge.

Charles D. Davis, III ("defendant") appeals from an order granting two motions in the cause brought by plaintiff Robin E. Davis ("plaintiff"), denying his motion to modify custody, and denying his motion to hold plaintiff in contempt of court. For the following reasons, we vacate in part and affirm in part.

**DAVIS v. DAVIS**

[229 N.C. App. 494 (2013)]

## I. Background

Plaintiff and defendant were married 12 December 1993, separated 13 August 2001, and divorced sometime in 2003.[1] The couple had two children—Mary, born 6 July 1995, and Sarah, born 29 November 1996.[2] After protracted custody litigation following the parties' separation, on 20 October 2003 Judge Lisa Thacker of the Union County District Court entered an order providing for joint legal custody of Mary and Sarah ("the 2003 order"). Plaintiff was granted primary custody of the children, and defendant was granted visitation on alternate weekends. Holidays, birthdays, and summers were split evenly. A special provision was added to accommodate defendant's National Guard schedule, providing for make-up visitation whenever drill weekends fell during defendant's regularly-scheduled visitation. Since the entry of the 2003 order, the parties have been embroiled in continual litigation over custody of their two daughters.

Their latest dispute, the subject of this appeal, was precipitated by an altercation between defendant and daughter Mary on 18 January 2009. On that evening, Mary and Sarah were at defendant's house during their regularly-scheduled weekend visitation. Defendant and Mary got into a heated argument when Defendant informed Mary that they had an additional day of visitation that weekend, but Mary believed that she and Sarah were supposed to return to Plaintiff's home that day. Mary demanded that defendant "show me the order" to prove that he had the additional day of visitation, and defendant physically disciplined Mary "in an inappropriate manner"—as described in further detail below.

As a result of the incident, a report was filed with the Union County Department of Social Services (DSS), and plaintiff, concerned for the safety of her daughters, unilaterally and without benefit of any court order cut off defendant's weekend visitation. Her concerns were amplified by past allegations of domestic violence involving plaintiff and defendant, as well as a separate domestic violence incident involving defendant and another previous wife. Plaintiff demanded defendant obtain anger management counseling before she would agree to resume defendant's visitation. In the meantime, plaintiff permitted her daughters to visit their father only on the condition that other family members were present.

---

1. The exact date of the parties' divorce is not clear from the record.

2. To protect the privacy of the children to the extent possible, and for ease of reading, we will refer to them by pseudonym.

In February, March, and April of 2009, several e-mails and letters were exchanged between the parties and their respective attorneys, apparently in an attempt to resolve the issue out of court, but neither party took any formal legal action. Plaintiff never pressed charges against defendant for assaulting Mary, never sought a domestic violence protective order under or moved for temporary custody under N.C. Gen. Stat. §§ 50B-3(a)(4) or 50-13.5(d)(2), (3) (2009) in response to the January incident. On 17 April 2009, DSS concluded its investigation, finding that any claims of child abuse arising from the incident were unsubstantiated.

On 8 May 2009 plaintiff filed a motion in the cause, asking the court to order defendant to attend anger management counseling as a result of the January incident and to formally suspend his visitation until further notice. On the same day, she filed what was styled as a "motion in the cause for modification/clarification of a prior custody order." Her motion asked the court to clarify certain "ambiguities" in the holiday and birthday provisions of the 2003 order and provide more guidance on how to schedule make-up visitation when defendant was away on drill weekend. Plaintiff alleged the parties' disagreements in interpreting the order had risen to the level of "a substantial and material change in circumstances affecting the best interest and general welfare of the minor children."

On 3 June 2009 defendant responded with a motion to modify custody, arguing he should be awarded primary custody because plaintiff had suspended his visitation in violation of the 2003 order, made false claims of abuse, and actively "instill[ed] alienation of the minor children from the Defendant/Father." Defendant amended this motion on 17 August 2009, but made nearly identical claims. The next day, 18 August 2009, defendant filed a motion to hold plaintiff in contempt for denying defendant's visitation in violation of the 2003 order. The district court entered a show cause order the same day, ordering plaintiff's appearance in court. At that time, it had been eight months since defendant had had any of his court-ordered visitation with his daughters.

These matters were first set for hearing on 22 September 2009 and then continued to 21 October 2009. On 19 May 2010, the trial court granted a motion for peremptory setting for 21 May 2010, which the parties had consented to because "certain witnesses live outside of the State of North Carolina and need to make work and travel arrangements in advance. In addition, this matter has been continued several times and Defendant and the minor children in this matter are in need of a resolution as soon as possible." The record does not reveal why

DAVIS v. DAVIS

[229 N.C. App. 494 (2013)]

the peremptory setting for 21 May 2010 did not result in a hearing,[3] but it did not, and nearly a year later, on 30 March 2011, defendant filed a Motion for Change of Venue,[4] asking that the case be transferred to Mecklenburg County due to his inability to have a hearing in Union County, alleging that

> 7. This matter has been scheduled by this Court at least five (5) times. The latest setting was for Monday, March 21, 2011. Over the objection of the Defendant/Father, this Court granted another motion to continue this matter filed by the Plaintiff/Mother. The basis of the request was so the Plaintiff/Mother could take the minor child to a pageant.[5]

> 8. Defendant/Father contends that he cannot get a hearing, let alone a fair hearing before this tribunal, and therefore respectfully requests this Court to transfer the venue of this matter out of Union County to Mecklenburg County.

> 9. Otherwise, the Defendant/Father will continue to have no visitation with the minor children and the poisonous ways of the Plaintiff/Mother will forever preclude a reconciliation with the minor children.

The long-awaited hearing finally started on 8 August 2011: 2 years, 6 months, and 21 days after the incident for which plaintiff unilaterally stopped defendant's visitation. Three days of hearing were held in

---

3. The purpose of peremptory setting is "to permit just and prompt consideration and determination" of cases that might otherwise be inappropriately delayed. Gen. R. Prac. Super. and Dist. Ct. 1, 2010 Ann. R. N.C.; *see Willoughby v. Kenneth W. Wilkins, M.D., P.A.*, 65 N.C. App. 626, 642, 310 S.E.2d 90, 100 (1983) (connecting the use of peremptory settings with this philosophy of the general rules of practice), *disc. rev. denied,* 310 N.C. 631, 631, 315 S.E.2d 697, 697-98 (1984). It is unclear why the peremptory setting here failed to result in prompt consideration and determination even after the district court decided that there was good reason to peremptorily set this case. *See* Union Cty. Local R. 3.13 ("Requests for peremptory settings will be granted at the discretion of the assigned judge but only for good cause.").

4. Although the issue raised by this motion is not a subject of this appeal, and we make no comment upon the legal sufficiency of the motion, we mention it only because it sheds some light upon the reasons for the protracted delay in the hearing of the pending motions.

5. In all fairness, we will quote plaintiff's response to this allegation verbatim: "The Plaintiff admits that she filed a Request to Continue as the parties' daughter was selected for Charleston Fashion Week (a regional fashion event) as a *model* for emerging designers—not a *pageant*. The parties' daughter has been involved in modeling for many years and had competed for and prepared for this event since October 2010 when the March court date had not even been set, and that the Court granted said Request; the remaining allegations are denied." (emphasis in original).

August and the final day was on 20 September 2011. On 11 August 2011, defendant voluntarily dismissed his motion for change of venue.

Eight months after the conclusion of the hearing, or 3 years, 3 months, and 22 days after the incident, on 10 May 2012, the trial court finally entered an order disposing of the parties' various motions.[6] The trial court denied defendant's motion to modify custody; denied defendant's motion for contempt; appended several "clarifications" to the 2003 order's visitation provisions; and ordered defendant to attend anger management counseling. Defendant filed written notice of appeal on 4 June 2012.

## II. Analysis

On appeal, defendant argues that (1) the trial court abused its discretion by modifying the 2003 order and ordering defendant to attend anger management counseling without expressly finding a substantial change in circumstances that affected the children's welfare; and (2) the trial court erred in failing to find plaintiff in contempt for her violations of the custody order. Because the trial court's findings are insufficient to support its modification of the custody order, we vacate those modifications. We affirm the trial court's denial of defendant's motion for contempt.

A.  Standard of Review

"[T]he presiding judge, who has the unique opportunity of seeing and hearing the parties, witnesses and evidence at trial, is vested with broad discretion in cases concerning the custody of children." *In re Custody of Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982) (citations omitted). On review of a trial court's order in such matters,

> the appellate courts must examine the trial court's find-
> ings of fact to determine whether they are supported by
> substantial evidence. Substantial evidence is such relevant
> evidence as a reasonable mind might accept as adequate
> to support a conclusion. . . . [S]hould we conclude that
> there is substantial evidence in the record to support the
> trial court's findings of fact, such findings are conclusive
> on appeal, even if record evidence might sustain findings
> to the contrary. . . . [T]his Court must [then] determine if

---

6. Plaintiff also filed a motion for judicial assistance on 4 June 2009 and a motion in the cause for modification of child support on 26 May 2010. While the trial court addressed the parties' child support disputes in its 10 May 2012 order, appellant does not challenge the trial court's disposition of these motions on appeal.

> the trial court's factual findings support its conclusions of law. . . . If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child[ren] and that modification was in the [children's] best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.

*Shipman v. Shipman*, 357 N.C. 471, 474–75, 586 S.E.2d 250, 253–54 (2003) (citations and quotation marks omitted).

B.   Modifying the 2003 Custody Order

**[1]** This Court has consistently held that "the trial court commit[s] reversible error by modifying child custody absent any finding of substantial change of circumstances affecting the welfare of the child." *Hibshman v. Hibshman*, 212 N.C. App. 113, 121, 710 S.E.2d 438, 443 (2011) (citation, quotation marks, and ellipses omitted); *see also* N.C. Gen. Stat. § 50-13.7(a) (2011) (providing that "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause *and a showing of changed circumstances* by either party or anyone interested." (emphasis added)). The term "custody" includes visitation as well. *Clark v. Clark*, 294 N.C. 554, 576, 243 S.E.2d 129, 142 (1978); N.C. Gen. Stat. § 50-13.1(a) ("Unless a contrary intent is clear, the word custody shall be deemed to include custody or visitation or both.").

"Conclusory statements regarding parental behavior" and "bare observations of plaintiff's or defendant's actions" are by themselves insufficient to support the modification of an existing custody order. *Garrett v. Garrett*, 121 N.C. App. 192, 196–97, 464 S.E.2d 716, 719 (1995), *disapproved on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). Instead, trial courts should "pay particular attention in explaining whether any change in circumstances can be deemed substantial, whether that change affected the welfare of the minor child, and, finally, why modification is in the child's best interests." *Shipman*, 357 N.C. at 481, 586 S.E.2d at 257. "It is not sufficient that there may be evidence in the record sufficient to support findings that could have been made. The trial court is required to make specific findings of fact with respect to factors listed in the statute." *Greer v. Greer*, 101 N.C. App. 351, 355, 399 S.E.2d 399, 402 (1991) (citations omitted). Moreover, "[t]he trial court cannot, on the one hand, conclude there was not a substantial change of circumstances and, at the same time, change the existing order." *Lewis v. Lewis*, 181 N.C. App. 114, 119, 638 S.E.2d 628, 631 (2007).

Our Supreme Court has explained why it is essential for trial courts to include a specific finding of a substantial change in circumstances affecting the welfare of the child prior to modifying a custody order:

> A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.

*Shepherd v. Shepherd,* 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968). Requiring this specific finding also ensures the modification is truly "necessary to make [a custody order] conform to changed conditions when they occur." *Stanback v. Stanback,* 266 N.C. 72, 76, 145 S.E.2d 332, 335 (1965). Finally, "[s]uch findings are required in order for the appellate court to determine whether the trial court gave 'due regard' to the factors" expressly listed in N.C. Gen. Stat. § 50-13.7. *Greer,* 101 N.C. App. at 355, 399 S.E.2d at 402.

In the case at bar, the trial court made the following findings of fact in its 10 May 2012 order:

> 14. The Defendant failed to prove a substantial change in circumstances requiring the modification of the custody Order and as such, his Motion to Modify the same is hereby denied.

> 15. During the week of January 2009, the two minor children were having their scheduled weekend visitation with the Defendant, per the court Order under which the parties were operating.

> 16. The Defendant expressed to the minor child [Mary] his interest in her and her sister remaining with him for an extra day, as the next day was a school holiday.

> 17. The minor child [Mary] expressed doubts to the Defendant that such an arrangement was in compliance with the Court Order and demanded to see where in the Court Order it allowed for such an extension of visitation.

DAVIS v. DAVIS

[229 N.C. App. 494 (2013)]

18. An argument ensued, during which [Mary] raised her voice and was disrespectful to both the Defendant and [his present wife].

19. In response to this, the Defendant lost his temper. The Defendant picked up [Mary] by the collar of her jacket and subsequently physically disciplined her in an inappropriate manner.

20. The Defendant physically manhandled [Mary] in an inappropriate fashion, given their relative size, strength, and age.

21. [Mary] had never seen Defendant exhibit a loss of temper in this fashion prior to this incident.

22. The Plaintiff took [Mary] to a doctor the next day because she was complaining of soreness and had a bruise on her neck as a result of the incident with the Defendant.

23. The best interests of the minor children would be served by the Defendant obtaining an anger management assessment.

24. The Defendant does not pose an immediate threat to the minor children and as such, the court-ordered visitation between the Defendant and the children should resume with the conditions outlined herein below.

The trial court also made a sole conclusion of law relevant to custody modification: "5. The Defendant's Motion to Modify Custody is hereby denied."

The order only twice mentioned a "substantial and material change of circumstances affecting the best interest and general welfare of the minor children": one was expressly limited to the trial court's disposition of a child support issue that is not challenged on appeal, and the other was in finding that defendant *failed* to prove a substantial change of circumstances sufficient for the court to grant his motion to modify custody.

Based on these factual findings and its conclusion of law, the trial court (1) ordered defendant to obtain an anger management assessment, follow through with any recommended treatment, and furnish documentation of the assessment and any treatments to plaintiff's counsel; (2) ordered the immediate resumption of defendant's visitation with his children, but limited it to "weekend daytime visits for several

weeks;" (3) appended several "clarifications" to the 2003 order's provisions covering Easter, spring break, birthday visits, and scheduling conflicts related to defendant's drill weekends; (4) added a requirement that plaintiff and the children must have telephone access to each other at all times in all future visits with defendant; and (5) prohibited defendant from physically disciplining his children in the future.

None of the trial court's modifications of the 2003 order were supported by a finding of a substantial change in circumstances that affected the welfare of the children. Our case law is clear that before a trial court may modify an existing custody order the trial court must determine that a substantial change of circumstances has occurred and that the change has affected the children's welfare. *See Shipman*, 357 N.C. at 474, 586 S.E.2d at 253 ("If the trial court concludes . . . that a substantial change has not occurred . . . the court's examination ends, and no modification can be ordered.").

Yet, plaintiff insists that (1) the trial court had the authority to order defendant to seek anger management treatment under Chapter 50B; (2) the trial court acted within the broad discretion granted to it to require a party to submit to a mental health evaluation; (3) the trial court has authority to "clarify" any "ambiguities" in an existing custody order that cause conflict among the parties, and that the trial court did not modify, but merely clarified, the 2003 order; and (4) the trial court is not required to expressly include a finding of a substantial change in circumstances affecting the welfare of the children when such a change can be inferred from the trial court's findings of fact. None of these arguments have merit.

First, plaintiff's argument about the trial court's authority under Chapter 50B is easily dismissed. Plaintiff never filed any pleadings under Chapter 50B. Whether the trial court would *have* had the authority *if* it had been considering a 50B action is entirely irrelevant to the issue of whether the trial court can do so under a motion in the cause in a Chapter 50 custody action.

Second, plaintiff cites our recent opinion in *Maxwell v. Maxwell*, ___ N.C. App. ___, 713 S.E.2d 489 (2011) for the sweeping proposition that "The trial court has broad discretion in child custody proceedings to require a party to submit to a mental health evaluation." Her recitation of the proposition is not incorrect; it is simply incomplete. The trial court has the discretion to require a party to submit to a mental health evaluation, or anger management, only if there is a legal basis for this requirement. In *Maxwell*, this Court indeed held that the trial court did

**DAVIS v. DAVIS**

[229 N.C. App. 494 (2013)]

not abuse its discretion by ordering the father to obtain a mental health evaluation before resuming visitation with his children. *See id.* at ___, 713 S.E.2d at 494. But the trial court's modification of the existing custody order was supported by its express finding that the father had committed acts of domestic violence against the mother and that the abusive behavior constituted "a substantial change in circumstances affecting the Minor Children."[7]

In support of her third argument, plaintiff relies on this Court's statement that a "trial court is not constrained to using 'certain and specific 'buzz' words or phrases in its order.' " *Karger v. Wood,* 174 N.C. App. 703, 709, 622 S.E.2d 197, 202 (2005) (quoting *Carlton v. Carlton,* 145 N.C. App. 252, 262, 549 S.E.2d 916, 923 (Tyson, J., dissenting), *rev'd per curiam per dissent,* 354 N.C. 561, 557 S.E.2d 529 (2001), *cert. denied,* 536 U.S. 944, 153 L.Ed. 2d 811 (2002)). She argues that the trial court was therefore not required to find a substantial change of circumstances to support its modification of visitation or its order requiring defendant to attend anger management assessment and treatment.

A finding of a substantial change in circumstances affecting the interests of the child is not just a "buzz word"— it is a legal requirement for modification of custody, and even if the "magic words" are not used, the factual findings must still make the substantial change of circumstances and its effect upon the children clear. The findings in this order do no such thing. The findings in this order simply express that the parties have many disagreements regarding many issues, including visitation, and they have done so for many years, and that, unfortunately, is a circumstance which is far from changed.

The case at bar is easily distinguished from both *Karger* and *Carlton.* In the latter two cases, the trial court expressly concluded there was a substantial change in circumstances to justify modifying the existing custody order, but simply failed to make a specific conclusion of law as to whether that change affected the welfare of the child. *See Karger,* 174 N.C. App. at 708, 622 S.E.2d at 201; *Carlton,* 145 N.C. App. at 255,

---

7. Although we did not mention this finding in our opinion in *Maxwell,* we take judicial notice that the finding was in the trial court's order. "[O]ur appellate courts may take judicial notice of their own records. . . ." *Four Seasons Homeowners Ass'n, Inc. v. Sellers,* 72 N.C. App. 189, 190, 323 S.E.2d 735, 737 (1984). This omission was likely due to the fact that the issue was not relevant on appeal: the appellant there was challenging the mental health evaluation on grounds that it was ordered "without a proper motion or sufficient notice pursuant to N.C. Gen. Stat. §1A-1, Rule 35;" *not* on grounds that it was ordered with insufficient findings to justify a custody modification. *Maxwell,* ___ N.C. App. at ___, 713 S.E.2d at 493.

549 S.E.2d at 919. In each case, the reviewing court held that the "nexus" between a substantial change in circumstances and an effect on the children involved was actually stated in, *see Karger,* 174 N.C. App. at 709–10, 622 S.E.2d at 202, or was plainly evident from, *see Carlton,* 145 N.C. App. at 263, 549 S.E.2d at 923–24, other parts of the order.

Here, on the other hand, the trial court did not conclude that there was a substantial change in circumstances, let alone that those changes affected the welfare of the children. Actually, the trial court found just the opposite as to defendant's motion and was silent as to plaintiff's motion. Moreover, it is not "self-evident" that a single incident where a father disciplines his child "in an inappropriate manner" constitutes a substantial change in circumstances affecting the welfare of his children, especially when the trial court also finds defendant "does not pose an immediate threat to the minor children" and orders visitation to resume immediately. *See Shipman,* 357 N.C. at 478, 586 S.E.2d at 256. This is not a case in which defendant was accused of a pattern of inappropriate discipline; plaintiff's allegation, and the court's finding, was of an isolated incident. In fact, the trial court found that "[Mary] had never seen Defendant exhibit a loss of temper in this fashion prior to this incident." Nor is it "self-evident" that conflicts over custody and visitation schedules constitute a substantial change in circumstances.

In order to require defendant to attend anger management treatment and modify the visitation schedule, the trial court had to conclude that there was a substantial change of circumstances affecting the welfare of the children. *Jones v. Patience,* 121 N.C. App. 434, 443, 466 S.E.2d 720, 725, ("[A]ssuming custody of the child has been adjudicated by the trial court, and in the absence of any pending motion in the cause [to modify custody], we do not believe court-ordered counseling for defendant or the child is supportable under Rule 35 or in the exercise of the trial court's inherent authority."), *app. dismissed and disc. rev. denied,* 343 N.C. 307, 471 S.E.2d 72 (1996); *Shipman,* 357 N.C. at 473–74, 586 S.E.2d at 253; N.C. Gen. Stat. § 50-13.7(a). It did not do so here.

Finally, plaintiff argues that the trial court was not required to make the findings necessary to support a modification because the changes to the visitation schedule here were mere "clarifications" rather than modifications. Plaintiff simply misstates the law when she claims trial courts may "clarify" orders without finding a substantial change in circumstances affecting the welfare of the children. The controlling authority is to the contrary: to justify any changes to an existing custody order, beyond those fixing mere clerical errors, *see* N.C. Gen. Stat. § 1A-1, Rule 60, North Carolina courts have required a showing of a substantial

change in circumstances affecting the welfare of the children, *see, e.g., Hibshman*, 212 N.C. App. at 124, 710 S.E.2d at 445 (*"There are no exceptions in North Carolina law to the requirement that a change in circumstances be shown before a custody decree may be modified."* (citation omitted)). To depart from this rule—that is, to allow parties to seek "clarification" from a court any time a custody order could be clearer or any time the parties disagree over its interpretation—would undermine the very purpose of the "changed circumstances" require-ment: checking the tendency towards continuous, acrimonious litiga-tion and providing stability for the minor children caught in the middle of such disputes. *See id.* at 123, 710 S.E.2d at 444.[8]

The trial court's changes also may not be properly characterized as corrections to "clerical mistakes" as contemplated by Rule 60 of the North Carolina Rules of Civil Procedure. With the possible exception of the changes to the Easter/Spring Break provision, none of the changes were needed as a result of an "oversight or omission" on the part of the original trial court that entered the 2003 order, *see* N.C. Gen. Stat. § 1A-1, Rule 60, and each change affects substantive rights and "alters the effect of the original order," *Pratt v. Staton*, 147 N.C. App. 771, 774, 556 S.E.2d 621, 624 (2001) (citation and quotation marks omitted).

As to the Easter/Spring Break provision, plaintiff did not provide any evidence, and the trial court did not find, that this provision would actually conflict in 2012, 2013, or 2014—the years that were remaining at the time of the hearing until both children are eighteen. The existence of a conflict would depend upon the children's actual school holiday sched-ules, and we have no evidence of those schedules in the record. Plaintiff simply testified that they could sometimes conflict. Additionally, plain-tiff did not move for relief under Rule 60 or argue at the hearing that these changes were needed to correct "mere clerical errors."

The trial court did not find that defendant's "inappropriate[] disci-pline[]" of his daughter rose to the level of a substantial change in cir-cumstances affecting the welfare of the children.[9] The trial court also

---

8. If the scheduling disputes were so difficult to resolve that they were affecting the welfare of the children, this would seem to be an appropriate case for appointment of a parenting coordinator. *See* N.C. Gen. Stat. § 50-91 (2011) (authorizing the trial court to appoint a parenting coordinator at any time during child custody proceedings either with the consent of the parties or without their consent after making the required findings).

9. On the contrary, the trial court found that "Defendant does not pose an immedi-ate threat to the minor children." Indeed, in her motion requesting that the trial court order defendant to attend anger management classes, plaintiff did not even argue that the January incident constituted a substantial change of circumstances.

did not find that the scheduling disputes constitute a substantial change of circumstances. Therefore, the findings of fact and conclusions of law are insufficient to support its requirement that defendant obtain anger management counseling and its modifications of visitation. Accordingly, we vacate those portions of the trial court's order modifying visitation and ordering defendant to attend anger management classes and we reinstate the visitation schedule set out in the 2003 custody order.[10]

C.  Defendant's Motion for Contempt

[2] In its 10 May 2012 order, the trial court made these further findings of fact:

> 13. The Plaintiff is not in willful contempt of court for her failure to comply with the [2003] visitation Order. The Plaintiff's failure to comply with said Order was justified under the circumstances.
>
> . . . .
>
> 25. Defendant/Father has not had his regular scheduled visitation since January 18, 2009.

Based upon these findings and the findings of fact detailed in the previous section, the trial court denied defendant's motion for contempt. On appeal, defendant principally argues that plaintiff's actions—suspending defendant's visitation over his objections and without any authority from a court—were not "justified" and thus constituted willful noncompliance with the 2003 order. Although there is some merit in this argument, we nevertheless affirm the trial court's denial of defendant's motion for contempt.

Under North Carolina law, "[a]n order providing for the custody of a minor child is enforceable by proceedings for civil contempt, and its disobedience may be punished by proceedings for criminal contempt . . . ." N.C. Gen. Stat. § 50-13.3(a). "The line of demarcation between civil and criminal contempts is hazy at best," *Blue Jeans Corp. v. Amalgamated Clothing Workers of Am.*, 275 N.C. 503, 507, 169 S.E.2d 867, 869 (1969),

---

10. With respect to the "phase in" of defendant's visitation for "several weeks," plaintiff further argues that defendant's objection to this change is now moot because the phase-in period has already passed. Although not perfectly clear from the record, it does appear that this issue is now moot. *See Robinson v. Robinson*, 210 N.C. App. 319, 335-36, 707 S.E.2d 785, 797 (2011) (holding that the visitation provisions of a custody order are moot because the child reached the age of majority). In any event, we need not address it because we have vacated the trial court's modifications to the prior custody order and we think this issue is unlikely to recur.

but in either case "a failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is willful," *Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 393 (1966); *see also* N.C. Gen. Stat. § 5A-11(a)(3) (2011) (defining criminal contempt as, *inter alia*, the "*Willful* disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution." (emphasis added)); N.C. Gen. Stat. § 5A-21(a)(2a) (2011) (noting a "[f]ailure to comply with an order of a court" is "a continuing civil contempt" only when "[t]he noncompliance by the person to whom the order is directed is *willful*" (emphasis added)).[11]

Willful disobedience is "disobedience which imports knowledge and a stubborn resistance" and which "imports a bad faith disregard for authority and the law." *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996) (citations and quotation marks omitted). "Willful[ness] [may also be] defined as the wrongful doing of an act without justification or excuse." *State v. Ramos*, 363 N.C. 352, 355, 678 S.E.2d 224, 226 (2009) (citation and quotation marks omitted).

Defendant argues the trial court's position—that plaintiff's failure to comply with the 2003 order was not willful because it was "justified under the circumstances"—is internally inconsistent: if the trial court found defendant "does not pose an immediate threat to the minor children" and did not condition the resumption of his visitation on obtaining an anger management assessment, then how could plaintiff be "justified" in unilaterally imposing that same condition on defendant for over two years, until the case was actually heard (and apparently for 8 more months after, while awaiting the trial court's ruling)?

Defendant's argument is strengthened by the fact that plaintiff opted to pursue self-help in this matter. North Carolina law provides concerned parents with ample means to address incidents like the one that occurred in January 2009 through fair and orderly procedures that are designed to deal with the problem promptly and not to separate a parent from his children for an extended period of time without sufficient reason to do. *See, e.g.*, N.C. Gen. Stat. § 50-13.5(d)(3) (allowing for entry of an ex parte order that changes custody where there is "a substantial risk of bodily injury" to the child), N.C. Gen. Stat. §§ 50B-2, 50B-3(a)(4)

---

11. Although defendant's argument on appeal focuses exclusively on civil contempt, the motion itself requested an order holding plaintiff "in civil and/or criminal contempt" of court. Regardless, because the trial court denied defendant's motion on grounds that plaintiff's disobedience was not willful, and because a lack of willfulness is dispositive of the issue under either standard, we need not decide whether plaintiff's disobedience is properly addressed under a criminal or civil contempt standard in this case.

(granting authority for courts to "[a]ward temporary custody of minor children and establish temporary visitation rights" *ex parte* where a court "finds that an act of domestic violence has occurred"). Yet plaintiff chose to ignore these procedures: at no time did she press charges against defendant for assault, seek a domestic violence protective order for the safety of her minor children or move for an ex parte order temporarily altering custody under N.C. Gen. Stat. § 50-13.5(d)(2) and (3). She "simply decided that she would allow Defendant to see the children but not have his scheduled visitation until he complied with her requests because she decided that obtaining anger management counseling should be prerequisite for him continuing to exercise visitation."

In a remarkably similar case, this Court affirmed a trial court's decision to hold a mother in contempt for unilaterally suspending a father's court-ordered visitation. In *Lee v. Lee*, 37 N.C. App. 371, 246 S.E.2d 49 (1978), the mother claimed the father "was in no condition to take care of" the child because the father was on medical disability for anxiety and had a chronically "dirty and unkempt" apartment, and because the mother had one disturbing incident where she brought the child for visitation and found the father's apartment "in a state of disarray, and the [father] looked disheveled, had bloodshot eyes, slurred speech and alcohol on his breath" and was "depressed, upset and crying." *Id.* at 373–74, 246 S.E.2d at 50–51. Taking matters into her own hands, the mother suspended the father's visitation and only allowed her daughter to visit the father "for a few hours at a time and not overnight," during which she "waited in her car for the child." *Id.* at 373, 246 S.E.2d at 50. Despite the mother's concerns, the trial court held her in contempt for violating the parties' custody order. *Id.* at 374, 246 S.E.2d at 51. Affirming this decision on appeal, this Court concluded:

> A review of the record on appeal indicates that the [mother's] own testimony was that, since September of 1976, she had not complied with the order of 3 September 1975. She made no attempt to petition the court for a modification of the 1975 order so as to require the [father] to keep his premises clean and refrain from the use of alcohol or drugs when exercising visitation rights. Instead, she chose to continue to ignore the 1975 order with regard to the [father's] visitation rights. This violation of the 1975 order was not justified.

*Id.* at 375, 246 S.E.2d at 51 (citation omitted).

Nevertheless, "[i]t is not the role of this Court to substitute its judgment for that of the trial court." *Scott v. Scott*, 157 N.C. App. 382, 388,

**DAVIS v. DAVIS**

[229 N.C. App. 494 (2013)]

579 S.E.2d 431, 435 (2003). "In contempt proceedings the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark*, 294 N.C. at 571, 243 S.E.2d at 139 (citations omitted).

Here, there was competent evidence presented at trial to support the trial court's finding that "[t]he Plaintiff's failure to comply with [the 2003 order] was justified under the circumstances." Defendant "manhandled" Mary and "physically disciplined her in an inappropriate manner" during the girls' visitation at his home on 18 January 2009. The girls returned to plaintiff's home later that night visibly shaken and upset, and plaintiff took Mary to the doctor the next day because Mary was complaining of soreness in her back and a bruise on her neck. DSS officials were asked to intervene based upon a report that defendant had inappropriately disciplined Mary. Nevertheless, after speaking with defendant and informing him that such forms of discipline were inappropriate, DSS ultimately decided that claims of child abuse were unsubstantiated and that the children were not in immediate danger of serious harm.

Despite DSS's investigation and failure to substantiate abuse, plaintiff testified she still feared for the safety of her daughters, and her fears were amplified by past allegations of domestic violence involving defendant. Mary and Sarah both testified they did not feel safe attending regularly-scheduled visitation with defendant until he acknowledged the January 2009 incident and sought an anger management assessment, in part because Plaintiff had also informed them about "things that happened when [they] were younger.[12] Plaintiff, in several e-mails and letters exchanged with defendant and among the parties' attorneys, made it clear that she would allow defendant's visitation to resume as soon as defendant sought professional help for what she perceived to be a pattern of anger issues,[13] but defendant refused to apologize for

---

12. In addition to informing the children of the prior allegations of domestic violence, plaintiff also took it upon herself to inform the children about counseling options available for anger management, according to their testimony, as well as informing them of details of the 2003 court order. Indeed, it is sadly ironic that the argument between defendant and Mary arose during a weekend visit when she demanded that defendant "show me proof" that the 2003 court order provided for an additional day of visitation on that particular weekend. Plaintiff had previously shown the children the 2003 court order and they wanted to make sure that defendant was following it—yet another irony, given plaintiff's own failure to follow the order's provisions for visitation.

13. The trial court did not find that defendant had a "pattern of anger issues": this is simply plaintiff's evidence.

or acknowledge the January 2009 incident, exacerbating the uneasiness felt by plaintiff and her daughters. Defendant largely ignored plaintiff's communications on this point and dismissed his daughters' concerns about the January incident. Additionally, there was some evidence that plaintiff attempted to arrange or at least agreed to non-regularly-scheduled visitation at school and sporting events.

Even though the trial court ultimately concluded that defendant was not a threat to his daughters, it is not entirely inconsistent for the trial court to consider plaintiff's fears and actions justified under the circumstances. The trial court's finding that plaintiff's actions were "justified under the circumstances" is adequate to support its denial of defendant's motion for contempt. Moreover, unlike the mother in *Lee*, plaintiff did eventually move to modify custody and require defendant to attend anger management treatment.

Here, the parties first sought to resolve the matter by negotiations through their attorneys and by waiting for the results of the DSS investigation, and when these efforts failed, plaintiff did seek modification of the custody order; the ensuing delay in disposition of the motions, with the continuing denial of visitation during this time, cannot be attributed solely to plaintiff. A party does not act willfully or with "a bad faith disregard for authority and the law" when their actions are justified. *See Hancock*, 122 N.C. App. at 523, 471 S.E.2d at 418; *Ramos*, 363 N.C. at 355, 678 S.E.2d at 226. The trial court may have been reluctant to hold plaintiff in contempt for acting on what it considered justifiable concerns for her children's safety.

Even if the evidence could have supported a contrary finding—and certainly it could have—there was at least some evidence to support the trial court's finding that plaintiff's actions were "justified under the circumstances." As there is sufficient evidence to support the trial court's finding as to contempt, *see Clark*, 294 N.C. at 571, 243 S.E.2d at 139, we must affirm the trial court's denial of defendant's motion for contempt.

In affirming the trial court's findings on contempt we do not mean to condone unilateral denial of visitation or other refusal to comply with a court order. As mentioned above, the law provides a parent in the midst of a custody dispute with a variety of options to resolve concerns over the safety of their children that do not involve consciously disregarding a court order. *See, e.g.*, N.C. Gen. Stat. § 50B-3(a)(4), N.C. Gen. Stat. § 50-13.5(d)(2)-(3). Self-help is not one of them. The damage caused by plaintiff's unilateral decision to stop defendant's court-ordered visitation was only exacerbated by the inexplicable three year delay in resolution

of these issues. We cannot fully discern from the record before us who is to blame for this inordinate delay, at least beyond the first few months, but the fault for at least a substantial portion of this delay seems to fall upon the trial court, given the allegations of defendant's motion for change of venue and plaintiff's response to the motion. We hope that there is another explanation which is not revealed by the record before us.

### III. Conclusion

For the reasons discussed above, the trial court erred in modifying the 2003 order without finding a substantial change in circumstances affecting the welfare of the children and we vacate those provisions of the 2012 order modifying the prior custody and visitation arrangement and ordering defendant to attend an anger management assessment. Because the trial court's findings of fact as to contempt are supported by competent evidence, and because those findings are adequate to support its conclusion of law, we affirm the trial court's denial of defendant's motion to hold plaintiff in contempt.

VACATED IN PART and AFFIRMED IN PART.

Judges CALABRIA and DAVIS concur.