NO. COA14-58
NO. COA14-68

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

CHRISTINA D'ALESSANDRO,
    Plaintiff,

v.                           Wake County
                             Nos. 11 CVD 1280, 11 CVD 9780

ADAM D'ALESSANDRO,
    Defendant.


Appeal by defendant from Orders entered 2 July 2013 and 12 July 2013 by Judge Lori G. Christian in District Court, Wake County. Heard in the Court of Appeals 21 May 2014.

> *Lane & Lane, PLLC by Freddie Lane, Jr. and Melissa C. Rush-Lane, for defendant-appellant.*

> *No appellee brief filed.*


STROUD, Judge.

Defendant appeals from two orders, one addressing motions by both parties for contempt as to a child custody order and defendant's motion to modify custody, and the other holding defendant in civil contempt for failure to pay child support as ordered. For the reasons stated below, we reverse the orders holding defendant in civil contempt due to the trial court's failure to inquire as to defendant's desire for counsel and his

ability to pay for legal representation. We remand the order as to modification of custody for additional findings of fact.

## I.  Background

The parties were married on 27 May 2000 and two children were born to their marriage—Madeline[1], born in 2002, and Cathy, born in 2004. Plaintiff also has a son, Andy, born in 1997 from a prior relationship, who was not adopted by defendant. On 28 January 2011, plaintiff filed a lawsuit in Wake County District Court, File No. 11 CVD 1280, seeking temporary and permanent custody as well as an emergency custody order of the two children of the marriage. On 14 February 2011, defendant filed his answer and counterclaims to the custody complaint, seeking custody of the two children of the marriage and also including a counterclaim for custody of Andy. On 13 May 2011, the trial court entered an order for temporary custody, granting the parties joint legal custody of the two children of the marriage, with primary physical custody to plaintiff, and granting sole legal custody of Andy to plaintiff.

On 27 June 2011, Wake County Child Support Enforcement filed a complaint in Wake County District Court, File No. 11 CVD 9780, for child support on behalf of Christina D'Alessandro,

---

[1] We will use pseudonyms to protect the privacy of the minor children.

seeking to establish child support for the two children of the marriage. A child support order ("child support order") was entered on 2 December 2011. This order found that defendant had voluntarily left his employment with Advanced Irrigation Repair, where he was earning $2600.00 per month, and that he had 20 years of experience in landscape irrigation. The trial court further found that defendant had not provided any support to plaintiff since July 2011. The child support order set defendant's child support obligation in the amount of $607.00 per month, effective 1 July 2011, and established child support arrears owed by defendant of $3035.00, to be paid at the rate of $13.00 per month.

During 2011, the parties, mostly defendant, filed numerous motions regarding custody disputes—defendant filed at least eleven—but we will not address the details of these motions and resulting orders as they are not relevant to the issues in this appeal. Ultimately, on 26 April 2012, the trial court entered an order for permanent custody in Wake County File No. 11 CVD 1280 which granted sole legal and physical custody of all three children to plaintiff. However, the trial court also found that defendant was a "de facto" parent of Andy and that plaintiff had acted in a manner inconsistent with her constitutionally

protected rights as a parent in creating a family unit with defendant and allowing defendant to share decision-making responsibilities as a parent of Andy, and granted defendant visitation with Andy.

The trial court made extensive findings as to defendant's animosity toward plaintiff, his controlling behaviors, his anger and inability to communicate with plaintiff, his disparaging comments about plaintiff to the children, his inappropriate discussions with the children about the plaintiff and the difficulties that the extensive conflict between the parents was causing the children. This order set out a detailed visitation schedule, required the parties to communicate through Our Family Wizard for the next 18 months, to have Andy and Cathy engage in therapy, and to participate in the children's therapy as recommended by the therapist.

Some other relevant requirements of the custody order were for defendant to pay half of "uninsured medical and counseling expenses for the minor children;" to register for an anger management class within 30 days; to pay plaintiff's attorney fees in the amount of $5,000.00, to be paid at a rate of $100.00 per month starting on 1 May 2012; and not to remove the

children from school without written consent from plaintiff except for regular visitation.

On 27 August 2012, the trial court entered an order granting plaintiff's motion to intervene as plaintiff in the child support action and removing the matter from the "IV-D docket and transfer[ing] to the courtroom of the assigned family court District Court Judge for all further hearings." This order also released the attorneys for Wake County Human Services Child Support Enforcement as attorneys of record.

During 2012, both before and after entry of the child support order and custody order noted above, the parties filed various motions and several orders were entered, most of which are not relevant for the purposes of this appeal. Overall, these motions and orders demonstrate that the parties continued to have many disputes regarding visitation, and defendant persistently continued to fail to pay child support as ordered. Of these numerous motions, we will discuss only the motions which were addressed in the trial court's orders now on appeal and which are relevant to the issues raised on appeal[2]:

---

[2] The orders disposed of the other pending motions but neither party has challenged the trial court's disposition of those motions on appeal.

1. On 7 May 2012, plaintiff filed a motion for order to show cause in File No. 11 CVD 1280 as to defendant's failure to pay $100 per month towards her attorney fees and to abide by the child custody order in various ways.

2. On or about 2 November 2012[3], defendant served upon plaintiff a motion *pro se* in file No. 11 CVD 1280 to modify child custody and visitation and child support, based on allegations regarding plaintiff's remarriage, claims of her emotional and physical neglect of the children, and that plaintiff had "commited (sic) fraud to obtain the current order."

3. On 10 May 2013, plaintiff filed a motion for an order to show cause in File No. 11 CVD 9780 as to defendant's failure to pay child support in violation of the child support order, alleging that he had paid only $26.00 since the 20 February 2013 hearing.

All of these motions, filed in both court files, were heard by the trial court on 20 February 2013. Plaintiff was represented by counsel, and defendant appeared *pro se*. The trial court entered two orders as a result of this hearing:

---

[3] Defendant's motion for modification apparently was not filed with the trial court prior to the hearing but was served upon plaintiff's counsel and this motion was heard by the consent of the parties.

1.  On 2 July 2013, in file No. 11 CVD 1280, the trial court entered an order on civil contempt and on defendant's motion to modify custody which allowed defendant's motion to modify custody but ordered only that defendant would no longer have the same visitation with Andy as the other two children and that Andy would be permitted to initiate visitation in the future; held defendant in civil contempt as to his failure to comply with the custody order; and held that defendant would be required to pay plaintiff's attorney's fees as set forth in the order in File No. 11 CVD 9780.

2.  On 12 July 2013, in File No. 11 CVD 9780, the trial court held defendant in civil contempt for failure to pay child support in the amount of $10,933.00; awarded plaintiff $10,000.00 in attorney fees, to be paid at a rate of $1000.00 per month; and remanded defendant into custody of the Sheriff of Wake County, to remain until paying $10,000.00 to purge himself of contempt, which sum would be first applied to child support arrearages and then to attorney's fees.

Defendant timely filed notice of appeal from both orders. Both appeals were heard by this panel on the same hearing date. Although the trial court did not formally consolidate the two actions, both were heard together and as a practical matter,

were treated as consolidated. We have therefore consolidated these cases for purposes of the appeals and issue one opinion addressing both.

## II. Contempt

Defendant raises the issue of the trial court's failure to inquire as to his desire for appointed counsel when it considered plaintiff's motions for contempt. In one order, defendant was held in civil contempt for his failure to comply with various provisions of the custody order, including his failure to pay for uninsured counseling expenses and to pay the attorney's fees at the rate of $100.00 per month, and in the other, he was held in civil contempt for failure to pay child support as required by the child support order. The trial court, in both cases,[4] "immediately remanded [defendant] into the custody of the Wake County Sheriff's Department," to "remain in custody until such time as he has purged his contempt by paying $10,000.00."

Where a defendant faces the potential of incarceration if held in contempt, the trial court must inquire into the

---

[4] The trial court actually included this provision in the order entered in File No. 11 CVD 9780, but ordered in File No. 11 CVD 1280 that "Defendant is held in civil contempt under the terms and conditions set forth in the contempt order in Wake County File No. 11 CVD 9780."

defendant's desire for and ability to pay for counsel to represent him as to the contempt issues. *King v. King*, 144 N.C. App. 391, 394-95, 547 S.E.2d 846, 848 (2001). A defendant may waive his right to representation but the record must reflect that he was advised of this right and he must voluntarily waive it. *See id.* This requirement has been long established by both the United States Supreme Court and the North Carolina Supreme Court:

> In light of the Supreme Court's opinion in *Lassiter*, we now hold that principles of due process embodied in the Fourteenth Amendment require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages. . . .
>
> At the outset of a civil contempt proceeding for nonsupport, the trial court should assess the likelihood that the defendant may be incarcerated. If the court determines that the defendant may be incarcerated as a result of the proceeding, the trial court should, in the interest of judicial economy, inquire into the defendant's desire to be represented by counsel and into his ability to pay for legal representation. If such a defendant wishes representation but is unable due to his indigence to pay for such representation, the trial court must appoint counsel to represent him.

*McBride v. McBride*, 334 N.C. 124, 131-32, 431 S.E.2d 14, 19 (1993).

At the hearing on 20 February 2013, when all of the pending motions were heard, defendant appeared *pro se*. There was obviously a likelihood that defendant may be incarcerated if held in contempt, as he had been previously held in contempt and incarcerated after a prior motion, and on 20 February 2013 defendant had to respond to two show cause orders, one alleging violation of the custody order and one alleging violation of the child support order. But there is no indication in the record that defendant was advised of his right to have counsel appointed to represent him on the contempt motions at this hearing. The only mention of the issue appears in the transcript, after a long colloquy during which the trial court identified all of the various pending motions filed by both parties which were to be heard that day:

> THE COURT: Okay. Now, I'm moving on to your motions, Mr. Williams.
>
> MR. WILLIAMS: Yes, Your Honor. May 7th, 2012 motion to show cause. [Pause.]
>
> MR. WILLIAMS: And that should've been— an order was issued in that as well.
>
> THE COURT: And Mr. D'Alessandro has signed waivers, I'm assuming.
>
> MR. WILLIAMS: This is the one where he was, Your Honor, wanted for arrest. I'm assuming he has.

THE COURT: Do you have a copy of that order? Of that order to show cause?

MR. WILLIAMS: I've got the motion.

Unfortunately, it appears from our record that Mr. Williams' assumption—that defendant had signed waivers—was unfounded. Perhaps he had signed waivers at other hearing dates, as this matter had been rescheduled several times, but nothing in the record in either File No. 11 CVD 1280 nor File No. 11 CVD 9780 shows that he waived his right to counsel for the hearing on 20 February 2013. And it would appear that had the trial court inquired, defendant might have been found, at least potentially, to be indigent and thus entitled to court-appointed counsel, as he claimed to be unable to pay the sums ordered by the trial court. *Cf. Young v. Young*, ___ N.C. App. ___, ___, 736 S.E.2d 538, 544 (2012) (noting that a defendant must show that he is indigent to be entitled to court-appointed counsel). Throughout the hearing, defendant steadfastly insisted he could not afford to pay plaintiff:

> [Defendant]: . . . . I can't financially comply. I can't be in compliance. As much as I try to honor, you know, every order out of the court, physically it's impossible to live, eat, and pay all that is required.
>
> . . . .
>
> [Defendant]: That is all cumulative total of

the 115, the 200 percent of my income that is tied up in these orders that is——where do I start? At the point of separation, we were $750,000 in debt, and I have some paperwork in here to verify that.

[Court]: How much were you in debt?

[Defendant]: About $750,000, Your Honor.

[Court]: That's marital debt?

[Defendant]: That was both marital and business. It was all together.

[Court]: Okay. And?

[Defendant]: She has since gone through the bankruptcy process. But quite honestly, I can't even afford to file for bankruptcy. Business bankruptcy costs about $30,000 in attorneys fees. And a personal bankruptcy, Chapter 13, would be at least $3,000.

We must therefore "conclude that the trial court erred by ordering that the defendant be incarcerated for civil contempt without the benefit of appointed counsel to represent him at the hearing resulting in his incarceration." *McBride*, 334 N.C. at 132, 431 S.E.2d at 20. Accordingly, we reverse both orders to the extent that they hold defendant in contempt of the custody order and the child support order.

### III. Modification of custody

Although the orders must be reversed as to the contempt provisions as discussed above, defendant did not have any right

to appointment of counsel to represent him regarding his November 2012 motion to modify the custody order, so we will address his arguments regarding the provisions of the 2 July 2013 order as to modification of custody. The trial court's order of 2 July 2013 addresses modification of custody to a very limited extent. The only findings of fact which could be considered as relevant to the modification issue[5] are as follows:

> 7. The minor child [Andy] did not exercise visitation with Defendant for several months.
>
> 8. The Court spoke with [Andy] and finds that
>
> > a. the minor child loves the Defendant but feels that the Defendant has purposefully rejected him as demonstrated by Defendant's unwillingness to hug the child prior to today's hearing;
> >
> > b. the minor does now and always has considered Defendant to be his father but considers prior actions of Defendant to be further evidence that Defendant has rejected him, including Defendant's earlier choice not to visit with the child.
>
> 9. The custody order was violated in that [Andy] did not visit with the Defendant;

---

[5] These findings seem mostly directed to address the defendant's motion to hold plaintiff in contempt as to denial of visitation with Andy, an issue defendant has not raised on appeal. But as they address some of the visitation issues, they could be considered as relevant to the motion to modify custody.

however, the lack of visitation was not willful on the part of the Plaintiff because the minor child refused to go based on his belief that Defendant had rejected him.

10. The parties agree at the hearing that there has been a substantial change in circumstances affecting the minor child [Andy] such that a modification of his custody and visitation is warranted.

11. It is in the best interest of the minor child that he have some contact with the Defendant that is initiated by the Defendant but that visitation with Defendant should be modified from the prior order.

Based on these findings of fact and the conclusion of law that "[t]here has been a substantial change in circumstances affecting the welfare of the minor child [Andy] as to warrant a modification of his custody and visitation[,]" the trial court ordered as follows:

3. The Defendant's motion to modify child custody is granted as to the visitation provision relating to [Andy] as follows:

a. Defendant shall have no further visitation obligation in regards to the minor child, [Andy,] unless initiated by [Andy];

b. Defendant shall initiate a dinner visit with the minor child within 1 month of this hearing (February 20, 2013);

c. Defendant shall not make any negative comments to the minor child regarding Plaintiff or her spouse.

> Defendant shall not discuss custody or
> custody related matters with [Andy].

On appeal from this order, defendant argues that the trial court failed to make findings of fact and conclusions of law fully addressing his motion to modify custody. Although there were several motions heard on 20 February 2013, defendant correctly points out that his evidence as to the motion to modify custody took up most of the time devoted to the hearing. In fact, when the trial court was reviewing the various pending motions and determining how to proceed to hear them all in an orderly manner, plaintiff's counsel agreed that defendant should present his evidence first, stating that "I believe the longer hearing is going to be his motion to modify custody, and that's his burden."

Defendant alleged several reasons to modify custody for all three children in his motion, and his evidence addressed these reasons as to all three children. Specifically, defendant presented evidence regarding his claims that plaintiff had "emotionally and physically neglected" the three children, not just Andy. His motion requested "51% legal and physical" custody of all three children, and at the hearing, he clarified that he was asking to be granted primary physical and legal custody of all three children. Defendant argues that "the court

order is devoid of any findings, conclusions or decree with respect to" the two biological children of the parties and that the trial court "should have ruled upon whether there was sufficient evidence to warrant modification of the permanent custody order with respect to the younger children."

Defendant does not challenge the limited findings of fact and conclusion of law as to the modification of the custody order regarding Andy, but argues that the trial court simply failed to address his motion for modification of custody as to the two younger biological children of the marriage, and he is correct. The order is devoid of any mention of the fact that he sought complete modification of the custodial arrangements for all three children. Thus, we cannot review the trial court's determinations as to the other two children.

> Our Supreme Court has explained why it is essential for trial courts to include a specific finding of a substantial change in circumstances affecting the welfare of the child prior to modifying a custody order:
>
> A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between

> parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.
>
> Requiring this specific finding also ensures the modification is truly necessary to make a custody order conform to changed conditions when they occur. Finally, such findings are required in order for the appellate court to determine whether the trial court gave due regard to the factors expressly listed in N.C. Gen. Stat. § 50-13.7.

*Davis v. Davis*, ___ N.C. App. ___, ___, 748 S.E.2d 594, 599 (2013) (citations and quotation marks omitted).

It would appear from the lack of findings of fact and conclusions of law as to the two biological children that the trial court did not find defendant's requests to be supported by the facts, the law, or perhaps both, but still the trial court needs to make findings of fact so that it is clear that defendant's motion to modify custody was addressed in full.

The need for this type of finding is even greater in a case such as this, which has been protracted and contentious, to the detriment of all three children. The absence of these findings of fact and conclusions of law serves to "invite constant litigation by a dissatisfied party so as to keep the involved child[ren] constantly torn between parents and in a resulting

state of turmoil and insecurity." *Id.* We must therefore remand the order concerning modification of custody to the trial court to make additional findings of fact and conclusions of law addressing the denial of defendant's motion to modify custody as to the two younger children. The trial court need not make any additional findings as to Andy, as the order modified visitation as to Andy and defendant has not challenged this modification on appeal.

## IV. Conclusion

For the reasons stated above, the orders of 2 July 2013 and 12 July 2013 are reversed as to any provisions holding defendant in civil contempt of the trial court's prior orders, and the order of 2 July 2013 is remanded to the trial court for additional findings of fact and conclusions of law addressing its denial of defendant's motion for modification of custody of the two younger children.

12 July 2013 Order in 11 CVD 9780: REVERSED.

2 July 2013 Order in 11 CVD 1280: REVERSED in part, REMANDED in part.

Judges STEPHENS and MCCULLOUGH concur.