TYSON, Judge.
 

 *230
 

 I. Factual Background
 

 Defendant and Marilyn Latriece Wilson ("Plaintiff") share joint legal custody of their son, who was thirteen at the time the contempt order was entered. Plaintiff has primary physical custody and lives in Durham, North Carolina. Defendant has secondary physical custody in the form of visitation and lives in Charleston, South Carolina. Defendant's visitation includes two weekends a month to be exercised at Defendant's discretion, so long as he gives proper notice.
 

 In relevant part, the 2011 child custody order provides:
 

 j) The parties may mutually agree to change these visitation times to accommodate their schedules and for the benefit of the minor child but the change must be mutual.
 

 (emphasis original)
 

 11. The Plaintiff and the Defendant shall meet at South of the Border Amusement Park ... to facilitate visitation between the minor child and the Defendant. And if at any time except for good cause shown (such as serious illness of child etc) that exchange does not occur, round trip gas expenses and hotel expenses in the amount of 279.00 are due by the end of the following week in addition to being subject to contempt of court.
 

 16. Failure to abide by the terms of this order is grounds for contempt[.]
 

 This order was modified in part by a consent order entered in March 2014. The consent order provided:
 

 The exchange for visitation with the minor child will take place at 10:00 o'clock P.M. on Friday night and 7:00 o'clock P.M. on Sunday night.
 

 *231
 
 2. If for any reason there is a delay in the exchanged meeting time due to unforeseen circumstances, which arise before the parties have to leave for the custody exchange, the party delayed will text the other party at least two (2) hours in advance as to the circumstances causing their inability to meet at the designated time as well as to let the other party know when they would be available to make the exchange;
 

 3. If any delays arise while the parties are on the road traveling to the exchange point, the party delayed will text the other party immediately with the same information referenced in the previous paragraph[.]
 

 4. All other terms of the previous Order of the Court will remain in full force and effect.
 

 Plaintiff filed a motion for contempt on 12 February 2016. The motion alleged Defendant had been "habitually late," and detailed a specific instance where their son missed a day of school after an exchange was missed on the Sunday of the Super Bowl. The hearing on the motion was scheduled for 11 July 2016.
 

 After receiving notice of the contempt motion, Defendant requested his current attorney to withdraw from representation and signed his consent to a motion for his counsel to withdraw on 20 May 2016. On 7 July 2016, Defendant filed a motion to continue the hearing, asserting as grounds that he needed to hire an attorney to represent him. This motion was denied. The motion to withdraw consented to by Defendant was brought before the court and granted on 11 July 2016, prior to the contempt hearing.
 

 At the hearing, Plaintiff testified she often had to text Defendant to determine whether he was on schedule. She testified since she was "generally waiting on him," she would usually wait to leave her home in Durham until she had confirmed Defendant was leaving Charleston. Plaintiff presented evidence tending to show Defendant had arrived late to over forty exchanges between May 2014
 
 *703
 
 and February 2016. Defendant arrived over two hours late on several of these occasions.
 

 Plaintiff testified Defendant made the following excuses for arriving late: (1) he was simply "running behind;" (2) a fast food restaurant messed up his order; (3) the kids needed to stop and use the bathroom; (4) he was waiting on a driver; or, (5) he was running late from work.
 

 *232
 
 Defendant testified he was late to the various exchanges, "[b]ecause things happen, life happens" and because their son wanted to continue playing. He testified he was in constant communication with Plaintiff regarding the exchange times.
 

 Regarding the missed exchange on the Sunday evening of the Super Bowl, Defendant asserted Plaintiff texted him and their son throughout the Super Bowl, and that both of them asked Plaintiff if they could wait to leave until after the game was over. After the game ended, Defendant testified he texted Plaintiff around 10 p.m. to ask whether she was ready to meet him, and asserted he and their son were in the truck ready to leave. Defendant testified they did not meet that night because Plaintiff said she was already in bed.
 

 Plaintiff testified she and Defendant agreed prior to the Super Bowl party that Defendant would leave at 8:30 p.m. to meet Plaintiff at the exchange location. On cross-examination, Plaintiff's counsel presented text messages to refresh Defendant's recollection of the times and content of Plaintiff's text messages to him. These texts demonstrated Plaintiff had texted Defendant several times throughout the evening, including at 8:30 p.m. to see if Defendant had left as agreed upon. Between 11:00 p.m. and 11:20 p.m., Plaintiff again asked Defendant if he had left to meet her at the exchange location. When she did not receive a response and had to work the following morning, she sent the message "I'm going to bed."
 

 Because the exchange did not occur Sunday night, their son missed attending school the next day. When Plaintiff requested a 7:00 p.m. exchange time Monday evening, Defendant responded he would meet her after he got off work. Plaintiff and her son did not arrive home in Durham until 1:15 a.m. Tuesday morning, where she had to work the following morning and their son had to attend school. Based upon the evidence presented, the trial court found Defendant in civil contempt of the child custody order. Defendant appeals.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 5A-24 (2015).
 

 III. Issues
 

 Defendant argues the trial court erred by: (1) failing to inquire into his desire for and ability to pay for legal representation, (2) finding him in civil contempt, (3) improperly modifying the custody order and
 
 *233
 
 imposing improper purge conditions, and (4) abusing its discretion in awarding Plaintiff attorney's fees.
 

 IV. Legal Representation
 

 Defendant argues the trial court erred when it failed to inquire into his desire for and ability to pay for legal representation.
 

 A. Standard of Review
 

 "Under the requirements of due process, a defendant should be advised of his or her right to have appointed counsel where the defendant cannot afford counsel on his own, and 'where the litigant may lose his physical liberty if he loses the litigation.' "
 
 King v. King,
 

 144 N.C. App. 391
 
 , 393,
 
 547 S.E.2d 846
 
 , 847 (2001) (quoting
 
 Lassiter v. Dept. of Social Services of Durham Cty., N.C.,
 

 452 U.S. 18
 
 , 25,
 
 101 S.Ct. 2153
 
 ,
 
 68 L.Ed.2d 640
 
 , 648 (1981) ). The burden of proof is on the litigant facing contempt to show "(1) he is indigent, and (2) his liberty interest is at stake."
 

 Id.
 

 B. Analysis
 

 This Court has held, "[i]n civil contempt proceedings, the question whether an indigent, alleged contemnor is entitled to counsel under the Due Process Clause of the Fourteenth Amendment to the United States Constitution is a determination made on a case-by-case basis."
 
 Tyll v. Berry
 
 ,
 
 234 N.C. App. 96
 
 , 101,
 
 758 S.E.2d 411
 
 , 415 (2014) ;
 
 see
 

 *704
 

 Hodges v. Hodges
 
 ,
 
 64 N.C. App. 550
 
 , 552,
 
 307 S.E.2d 575
 
 , 577 (1983) ("When a civil proceeding may result in imprisonment, due process requirements are met by evaluating the necessity for appointed counsel on a case-by-case basis."). "[A]ppointment of counsel for indigents is required only where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise insure fundamental fairness."
 
 Hodges
 
 ,
 
 64 N.C. App. at 552
 
 ,
 
 307 S.E.2d at 577
 
 (citation and internal quotation marks omitted).
 

 Defendant cites a recent case from this Court to support the contention that "[w]here a defendant faces the potential of incarceration if held in contempt, the
 
 trial court must inquire
 
 into the defendant's desire for and ability to pay for counsel to represent him as to the contempt issues."
 
 D'Alessandro v. D'Alessandro
 
 ,
 
 235 N.C. App. 458
 
 , 462,
 
 762 S.E.2d 329
 
 , 332 (2014) (emphasis supplied) (citing
 
 King v. King
 
 ,
 
 144 N.C. App. 391
 
 , 394-95,
 
 547 S.E.2d 846
 
 , 848 (2001) );
 
 see also
 

 McBride v. McBride
 
 ,
 
 334 N.C. 124
 
 , 131,
 
 431 S.E.2d 14
 
 , 19 (1993) (holding the "principles of due process embodied in the Fourteenth Amendment require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages").
 

 *234
 
 However, these cases relate specifically to civil contempt proceedings for nonsupport. Our Courts have held in cases for nonsupport:
 

 [w]hen a truly indigent defendant is jailed pursuant to a civil contempt order which calls upon him to do that which he cannot do-to pay child support arrearage which he is unable to pay-the deprivation of his physical liberty is no less than that of a criminal defendant who is incarcerated upon conviction of a criminal offense.
 

 McBride
 
 ,
 
 334 N.C. at 130-31
 
 ,
 
 431 S.E.2d at 19
 
 .
 

 Here, Defendant was held in civil contempt for his failure to comply with provisions of the custody order regarding the exchange time for weekend visitations. Defendant has the ability to comply with the purge conditions as imposed and the instant case presents no "unusually complex issues of law or fact which would necessitate the appointment of counsel."
 
 Hodges
 
 ,
 
 64 N.C. App. at 553
 
 ,
 
 307 S.E.2d at 577
 
 .
 

 Defendant received notice of the hearing several months prior to the scheduled date, at which time he was represented by retained counsel. On 20 May 2016, Defendant consented to and signed a motion to allow his retained counsel to withdraw. The motion indicated Defendant did "not wish for her to represent him on the current [contempt] motion and desires that she withdraw." On 7 July 2016, Defendant filed a motion to continue the hearing because he was "in the process of retaining an attorney to represent [his] case." The trial court denied this motion.
 

 The trial court granted Defendant's attorney's motion to withdraw at the beginning of the scheduled hearing, but only after the court confirmed with Defendant that he had requested and consented to his counsel's withdrawal. The trial court also confirmed that Defendant was aware the court had denied his motion to continue. The record shows Defendant: (1) had retained his prior counsel; (2) was aware of the pending contempt motion when he consented to his counsel withdrawing; (3) owns his own business in South Carolina; and, (4) spent funds to host a Super Bowl party.
 

 Defendant never represented he was indigent nor requested the trial court to appoint him an attorney prior to or during the hearing. After reviewing the entire record and the nature of the case, the trial court did not err by failing to inquire into Defendant's desire for or ability to pay for legal representation.
 
 See
 

 Hodges
 
 ,
 
 64 N.C. App. at 552
 
 ,
 
 307 S.E.2d at 577
 
 . Defendant's argument is overruled.
 

 *235
 

 V. Contempt Order
 

 Defendant argues the trial court's findings of fact do not support the conclusion that Defendant was in willful contempt of the prior custody order. Defendant further argues the trial court improperly modified the underlying custody order and imposed improper purge conditions.
 

 *705
 

 A. Standard of Review
 

 The standard of review of orders from contempt proceedings is limited to determining whether competent evidence supports the findings of fact and whether those findings support the conclusions of law.
 
 Sharpe v. Nobles
 
 ,
 
 127 N.C. App. 705
 
 , 709,
 
 493 S.E.2d 288
 
 , 291 (1997). Where the admitted evidence supports the trial court's findings, those findings are binding on appeal "even if the weight of the evidence might sustain findings to the contrary."
 
 Hancock v. Hancock
 
 ,
 
 122 N.C. App. 518
 
 , 527,
 
 471 S.E.2d 415
 
 , 420 (1996). "[T]he credibility of the witnesses is within the trial court's purview."
 
 Scott v. Scott
 
 ,
 
 157 N.C. App. 382
 
 , 392,
 
 579 S.E.2d 431
 
 , 438 (2003).
 

 B. Findings of Fact and Conclusions of Law
 

 N.C. Gen. Stat. § 5A-21(a) (2015) provides:
 

 (a) Failure to comply with an order of a court is a continuing civil contempt as long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
 

 "The purpose of civil contempt is to coerce the defendant to comply with a court order, not to punish him."
 
 Scott
 
 ,
 
 157 N.C. App. at 393
 
 ,
 
 579 S.E.2d at 438
 
 . "A failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is [willful], which imports knowledge and a stubborn resistance."
 
 Mauney v. Mauney
 
 ,
 
 268 N.C. 254
 
 , 257,
 
 150 S.E.2d 391
 
 , 393 (1966). The trial court is also required to make a specific finding regarding "the defendant's ability to comply
 
 *236
 
 during the period in which he was in default."
 
 Scott
 
 ,
 
 157 N.C. App. at 394
 
 ,
 
 579 S.E.2d at 439
 
 .
 

 Here, the trial court found Defendant had "refused to comply with the terms of the Court's prior orders by being habitually late for weekend pickups and drop-offs." The trial court's Findings of Fact 4 through 10 detail the circumstances surrounding the Super Bowl party and their son missing the following day of school. Findings of Fact 11 and 12 provide:
 

 11. That the Defendant has an automobile, a driver's license, and other potential drivers available who could have taken the minor child to the drop-off point in a timely manner for the exchange of the minor child;
 

 12. That the Defendant had the ability to comply with the Court's prior Orders, and the Defendant willfully disobeyed those Orders[.]
 

 Defendant argues these findings do not support the conclusion of law that "Defendant is in willful contempt of the prior Orders of the Court," and asserts the order allows even habitual lateness. We disagree.
 

 We acknowledge the orders allow for delays due to "unforeseen circumstances," so long as the appropriate notice is given. However, the trial court's findings and the evidence on the record do not demonstrate that Defendant's habitual lateness resulted from "unforeseen circumstances." The record shows Defendant was late due to bathroom stops, incorrect fast food orders, and simply because, in Defendant's own words, "things happen, life happens." The trial court did not err by holding Defendant was in contempt of the previous order based on this evidence.
 

 The findings regarding the Super Bowl party alone would support an order holding Defendant in contempt. The original order provides either party may be held in contempt "if at any time except for good cause shown (such as serious illness of child) [an] exchange does not occur[.]" Pursuant to the orders, the parties may agree to different times for visitation.
 

 In this case, the evidence supports the trial court's finding that although the parties agreed Defendant would leave the Super Bowl party at 8:30 p.m. to meet for the exchange, Defendant refused to leave at the agreed upon time and, as a result, the exchange did not occur.
 

 *706
 
 In Findings of Fact 11 and 12, the trial court made the requisite findings regarding Defendant's ability to comply and that Defendant's
 
 *237
 
 noncompliance was willful, and these findings were supported by the evidence. Compliance with scheduled meeting times and appointments are not "suggestions" or "discretionary." Other individuals' work and school schedules and appointments are equally, if not more, important as Defendant's, particularly when those required exchange times are established by court order.
 

 The order provides flexibility for unusual circumstances and unexpected delays, which Defendant clearly and repeatedly abused. Plaintiff's evidence tended to show Defendant had arrived late to over forty exchanges between May 2014 and February 2016. Defendant arrived over two hours late on several of these occasions. The trial court's findings are supported by competent evidence, and those findings support the trial court's conclusion that Defendant was in willful contempt of the prior orders of the court.
 
 See
 

 Sharpe
 
 ,
 
 127 N.C. App. at 709
 
 ,
 
 493 S.E.2d at 291
 
 .
 

 C. Improper Modification and Purge Conditions
 

 Under
 
 N.C. Gen. Stat. § 50-13.7
 
 (a) (2015), "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." "The trial court may modify custody only upon motion by either party or anyone interested. The trial court may not
 
 sua sponte
 
 enter an order modifying a previously entered custody decree."
 
 Kennedy v. Kennedy,
 

 107 N.C. App. 695
 
 , 703,
 
 421 S.E.2d 795
 
 , 799 (1992) (internal citation and quotations omitted).
 

 This Court has noted:
 

 When the court modifies custody or visitation because of violations of a visitation order, it must be careful not to confuse the purposes of modification and contempt. The court modifies custody or visitation because substantial changes in circumstances have made a different disposition in the best interest of the child. A custodian should not violate the visitation order, but if he or she does, then ordinarily the proper response is a finding of contempt, not modification.
 

 Jackson v. Jackson
 
 ,
 
 192 N.C. App. 455
 
 , 463-64,
 
 665 S.E.2d 545
 
 , 551 (2008) ;
 
 see
 
 3 Suzanne Reynolds,
 
 Lee's North Carolina Family Law
 
 § 13.52 (5th ed. 2002) (when a custody order is violated "ordinarily the proper response is a finding of contempt, not modification").
 

 *238
 
 Under N.C. Gen. Stat. § 5A-22(a) (2015), a contempt order "must specify how the person may purge himself of the contempt." The purge conditions cannot be impermissibly vague, but must "clearly specify what the defendant can and cannot do ... in order to purge herself of the civil contempt."
 
 Cox v. Cox
 
 ,
 
 133 N.C. App. 221
 
 , 226,
 
 515 S.E.2d 61
 
 , 65 (1999).
 

 Here, the trial court provided that Defendant could purge himself of contempt by both picking up and dropping off their son in Durham for the next three weekend visits. The Court further provided that if Defendant was more than thirty minutes late to either pick up or drop off Mark, a weekend visitation would be forfeited. These provisions do not constitute a modification of custody.
 
 See
 

 Tankala v. Pithavadian
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 31
 
 , 33 (2016) (holding a trial court's order providing additional dates and locations for custodial visitation not inconsistent with the governing child custody order is not a modification of the terms of custody).
 

 Permanent joint legal custody and secondary physical custody remained with Defendant both before and after the contempt order. These provisions more specifically identify what Defendant can and cannot do regarding the visitation times in order to purge himself of the civil contempt and insure Defendant's compliance with the previous court orders.
 
 See
 

 Cox
 
 ,
 
 133 N.C. App. at 226
 
 ,
 
 515 S.E.2d at
 
 65 ;
 
 Scott
 
 ,
 
 157 N.C. App. at 394
 
 ,
 
 579 S.E.2d at 439
 
 . The trial court did not improperly modify custody or impose improper purge conditions.
 

 VI. Attorney's Fees
 

 Defendant argues the trial court abused its discretion when it awarded Plaintiff attorney's fees.
 

 *707
 
 Prior to an award of attorney's fees under
 
 N.C. Gen. Stat. § 50-13.6
 
 , the trial court must receive evidence and make findings that: (1) the interested party was acting in good faith; and (2) the interested party had insufficient means to defray the expense of that suit.
 
 Wiggins v. Bright
 
 ,
 
 198 N.C. App. 692
 
 , 696,
 
 679 S.E.2d 874
 
 , 877 (2009) (upholding an award of attorney's fees to defendant where plaintiff filed a frivolous contempt action). Under
 
 N.C. Gen. Stat. § 50-13.6
 
 , the trial court's order must also include findings "upon which a determination of the requisite reasonableness can be based[.]"
 
 Davignon v. Davignon
 
 , --- N.C. App. ----, ----,
 
 782 S.E.2d 391
 
 , 397 (2016) (quotation marks and citation omitted). If the court fails to make the necessary findings, we are effectively precluded "from determining whether the trial court abused its discretion
 
 *239
 
 in setting the amount of the award."
 
 Williamson v. Williamson
 
 ,
 
 140 N.C. App. 362
 
 , 365,
 
 536 S.E.2d 337
 
 , 339 (2000).
 

 Here, the trial court failed to make any of the requisite findings necessary to award attorney's fees. We vacate the trial court's award of attorney's fees to Plaintiff and remand for further findings consistent with this opinion.
 
 Wiggins
 
 ,
 
 198 N.C. App. at 696-97
 
 ,
 
 679 S.E.2d at 877
 
 .
 

 VII. Conclusion
 

 After reviewing the entire record, and in the absence of any request by Defendant, the trial court did not err by failing to inquire into Defendant's desire or ability to pay for legal representation. Competent evidence supports the findings of fact, which support the trial court's conclusion that Defendant's actions were in willful contempt of the prior orders of the court. Furthermore, the contempt order does not improperly modify custody or impose improper purge conditions. These portions of the trial court's order are affirmed.
 

 We vacate the award of attorney's fees and remand to the trial court to make the necessary findings as required by law.
 
 See
 

 Wiggins
 
 ,
 
 198 N.C. App. at 696-97
 
 ,
 
 679 S.E.2d at 877
 
 .
 
 It is so ordered.
 

 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 

 Chief Judge McGEE and Judge INMAN concur.